**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

May 9, 2023

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAVID M. FRALEY, | No. 56697-4-II |
| Respondent, | |
| v. | |
| COMMONSPIRIT HEALTH, a Colorado corporation d/b/a CATHOLIC HEALTH INITIATIVES; FRANCISCAN HEALTH SYSTEM, a Washington corporation d/b/a ST. JOSEPH MEDICAL CENTER; PROLIANCE SURGEONS, INC., P.S., a Washington professional Service Corporation d/b/a PROLIANCE PUGET SOUND ORTHOPAEDICS; JOHN BLAIR, JR., MD, individually; UNKNOWN JOHN DOES, and JOHN DOE CLINICS, | PUBLISHED OPINION |
| Petitioners. | |

VELJACIC, J. — This is a petition for discretionary review of the trial court's order denying Proliance Surgeons, Inc., P.S and Dr. John Blair Jr.'s motion for summary judgment. Proliance and Dr. Blair argue that the trial court erred in denying their motion because David Fraley's complaint for medical malpractice was barred by the three-year statute of limitations in RCW 4.16.350(3). More specifically, Proliance and Dr. Blair argue the trial court erred in concluding that Fraley's mediation letter was sufficient to toll the statute of limitations for one year under RCW 7.70.110.

On the facts of this case, we hold that the trial court did not err in denying Proliance and Dr. Blair's motion for summary judgment because Fraley's mediation letter was sufficient to toll

the statute of limitations for one year under RCW 7.70.110. Therefore, Fraley's complaint for medical malpractice was timely filed. Accordingly, we affirm the trial court's order denying Proliance and Dr. Blair's motion for summary judgment and remand for further proceedings.

FACTS

I. FRALEY'S SPINAL SURGERY

On September 21, 2017, Dr. Blair performed spinal surgery on Fraley at St. Joseph's Hospital in Tacoma. On September 22, at about 3:00 P.M., Fraley awoke from a nap and could not move his legs. His wife, Stacey Fraley, alerted the nurses. Around 7:00 P.M., she told one of the nurses that Fraley was not urinating and she was afraid something was wrong. As the night progressed, Fraley's condition did not improve. Fraley still could not move his legs and he could no longer accurately perceive the temperature of the hospital room.

At about 10:45 P.M., the nurses conducted a bladder scan, found 1,000 ml of urine in Fraley's bladder, and placed a catheter. At 10:47 P.M., the nurse informed Dr. Blair about Fraley's complaint of paralysis in his legs. According to the medical records, Dr. Blair stated he would check on Fraley in the morning.

On September 23, at about 5:00 A.M., hospital staff and Dr. Blair told Stacey[1] that Fraley needed to be taken back into surgery to treat an epidural hematoma. Dr. Blair told her that her husband "would probably be paralyzed when he got out of surgery." Clerk's Papers (CP) at 165.

Post-surgery, Fraley was transferred to the St. Joseph Rehabilitation Unit, where he underwent intensive physical therapy and learned to walk again. However, he continued to

---

[1] We use Stacey's first name for clarity because she shares the same last name as the respondent. No disrespect is intended.

experience "constant terrible pain in his trunk and legs," bowel and bladder trouble, and impaired sexual function.  CP at 166.

II.      MEDIATION LETTER

A few months after the surgeries, the Fraleys contacted a law firm to pursue a medical malpractice action, but the Fraleys were told it was too early to file a claim.  Nearly three years later, in August 2020, the Fraleys contacted another law firm.  An attorney informed them that the firm could not take the case due to a conflict.  However, the firm sent the Fraleys a letter to send to certain medical providers to request mediation, which would toll the statute of limitations for one year.  It also recommended another law firm to the Fraleys.

The Fraleys received two electronic versions of the letter to toll the statute of limitations.  One of the letters was titled "2020-08-24-Tolling Letter Draft- General St. Joseph's.docx" and was addressed to "St. Joseph's Medical Center, Attn: Risk Management, 1717 South J St, Tacoma, WA 98405."  CP at 168.  The second electronic letter was titled "2020-08-24 - Tolling Letter Draft - Dr. Blair.docx" and was addressed to "Dr. John Blair, M.D, St. Joseph's Medical Center, Attn: Risk Management, 1717 South J St, Tacoma, WA 98405."  CP at 168.

The Fraleys sent hard copies of the letters to St. Joseph's and Catholic Health Initiatives (CHI) Franciscan Risk Management Department via certified mail, with Fraley handwriting his name and date of birth on the letter, but otherwise making no other change.[2]  The envelope enclosing Fraley's mediation letter to Dr. Blair is postmarked September 11, 2020.  The letter addressed to Dr. Blair stated,

> Prior to filing a cause of action, I am writing to request mediation of my
> claims against you for medical negligence surrounding my care after surgery on

---

[2] Stacey's name was not included in the mediation request letters sent, resulting in the dismissal of her claims due to the statute of limitations having run.  She does not seek review of this dismissal.

September 21st, 2017. Pursuant to RCW 7.70.110, the making of a good faith request for mediation tolls the statute of limitations for one year. RCW 4.16.350 provides a three-year statute of limitations for claims relating to health care. The statute of limitations will now run on September 21st, 2021.

Please have your attorney or insurance carrier contact me to discuss the best time to schedule mediation in this matter. Thank you.

CP at 68. In her declaration, Stacey stated that,

Everything [Fraley] and I knew about the letters that would pause the statute of limitations was told to us by [the law firm]. We did no independent research into what was required. They told us they would provide us with the letters necessary to pause the statute of limitations on our claim and we believed that what they provided us would, in fact, pause the statute of limitations on our claim. I did notice that the letter to Dr. Blair was addressed to St. Joseph. It did not occur to me that that was going to be a problem or that we were sending the letter to the wrong place. It made sense to me that the letters to both St. Joseph and to Dr. Blair would be sent to St. Joseph because that's where all the care we were concerned about occurred and also because we knew Dr. Blair worked at St. Joseph and I expected Dr. Blair to get mail that was sent there for him.

CP at 169. In his declaration, Fraley stated that,

I understood that, in addition to pausing the statute of limitations, part of the purpose of the letters was to request mediation of our claims against St. Joseph and Dr. Blair. . . Before we were told about the letters, we didn't know requesting mediation was something we could even do, and we were glad that was a possibility. I genuinely would have preferred to mediate our claims instead of filing a lawsuit. Had St. Joseph Medical Center, Dr. Blair, and/or Proliance agreed to mediate our claims, I would have happily participated.

CP at 178.

There was no separate letter for Fraley to send to Proliance, Dr. Blair's actual employer. Neither was there a letter for Fraley to send to Proliance's business address.

Dr. Blair's primary clinic is Puget Sound Orthopaedics, which is a division of Proliance, and is located at 1724 W. Union Avenue, Tacoma, Washington 98405. Dr. Blair is an employee and shareholder at Proliance and has been a partner at Puget Sound Orthopaedics since 2008.

Dr. Blair has surgical privileges at St. Joseph's and MultiCare Tacoma General Hospital. Dr. Blair has seen and treated Fraley at both of these hospitals. Additionally, Fraley had visited

4

Dr. Blair's clinic (Puget Sound Orthopaedics, a division of Proliance) on several occasions since 2017. Dr. Blair is not employed by either of these hospitals or CHI. St. Joseph's and CHI are not the registered agents for Proliance or Dr. Blair.

On September 14, 2020, St. Joseph's received both letters, but due to Dr. Blair not being employed by the hospital, it did not open the letter addressed to him. St. Joseph's/CHI's protocol for letters addressed to nonemployee physicians is to either return the mail to the sender or forward it to the correct address. This decision rests with the mail clerk or whomever the mail is addressed to.

On September 22, 2020, a staff member of St. Joseph's risk management office forwarded the unopened letter to Dr. Blair at Proliance after doing an online search for his contact information. St. Joseph's had no other contact with Dr. Blair or Proliance about Fraley's mediation request. Proliance and Dr. Blair eventually received the mediation letter, however, there is no evidence as to when that occurred.

Dr. Blair did not become personally aware of the mediation request until late September or early October 2020. Proliance and Dr. Blair did not respond to Fraley's mediation request believing that his claims were time barred when it was received.

III. PROCEDURAL HISTORY

On May 29, 2021, Fraley filed a complaint alleging medical malpractice against Commonspirit Health (d/b/a CHI), St. Joseph's Medical Center, Proliance, and certain unknown individuals and clinics. Fraley amended his complaint to include Dr. Blair four days later.

On August 12, Proliance and Dr. Blair filed a motion for summary judgment seeking dismissal of all claims against them based on the statute of limitations. Proliance and Dr. Blair argued that Fraley failed to sufficiently invoke the tolling provision set out in RCW 7.70.110 to

56697-4-II

make his complaint timely because his mediation letter was sent to the wrong address and was not made in good faith. Proliance and Dr. Blair also argued that the tolling provision did not apply because, under CR 5, they did not receive the mediation letter until after the statute of limitations had expired.

In response, Fraley argued that his complaint was timely filed because RCW 7.70.110 is procedurally informal and only requires a request to be made in writing and good faith. In essence, Fraley contended that mailing the letter to St. Joseph's was made in good faith and was sufficient to notify Dr. Blair of his mediation request because that is where the alleged negligent acts or omissions occurred. Fraley also asked the trial court to reject Proliance and Dr. Blair's date-of-receipt argument because "RCW 7.70.110 does not say the limitations period is tolled upon defendant's *receipt* of a request for mediation—it says it is tolled upon the *making* of a request for mediation." CP at 190.

The trial court denied Proliance and Dr. Blair's motion for summary judgment. It the certified the matter for discretionary review.

On May 24, 2022, we granted Proliance and Dr. Blair's petition for discretionary review under RAP 2.3(b)(4).

At oral argument, we inquired of Dr. Blair and Proliance's counsel as to whether or not Dr. Blair is an agent of Proliance, to which counsel replied: "Yes. Dr. Blair is an agent and employee of Proliance." Wash. Court of Appeals oral argument, *Fraley v. Commonspirit Health*, No, 56697-4-II (Jan. 26, 2023), at 10 min., 18 sec. to 10 min., 25 sec., https://tvw.org/video/division-2-court-of-appeals-2023011381/. We then asked counsel how exactly Dr. Blair is an agent of Proliance. Wash. Court of Appeals oral argument, *supra*, at 10 min., 26 sec. to 10 min., 36 sec. Counsel explained that "a partner or owner of a business acting in the course of that business, or as well as

6

an employee of business acting in the course of that business is essentially the most traditional notion of an agent." Wash. Court of Appeals oral argument, *supra*, at 10 min., 50 sec. to 11 min., 1 sec.

## ANALYSIS

Proliance and Dr. Blair argue that the trial court erred in denying its motion for summary judgment because Fraley's complaint for medical malpractice was barred by the applicable statute of limitations. We disagree.

I.    STANDARD OF REVIEW

"We review a summary judgment order de novo, engaging in the same inquiry as the trial court." *City of Seattle v. Long*, 198 Wn.2d 136, 145, 493 P.3d 94 (2021). Summary judgment is appropriate if the pleadings, affidavits, and depositions show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018); CR 56(c). We consider the facts and reasonable inferences in the light most favorable to the nonmoving party. *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). Summary judgment is proper if, given the evidence, reasonable persons could reach only one conclusion. *Walston v. Boeing Co.*, 181 Wn.2d 391, 395, 334 P.3d 519 (2014).

The meaning of a statute is a question of law that we also review de novo. *Long*, 198 Wn.2d at 147. "'The court's fundamental objective in construing a statute is to ascertain and carry out the legislature's intent.'" *Id*. at 148 (internal quotation marks omitted) (*quoting Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010)). "If a statute's meaning is plain on its face, we must follow that plain meaning." *Id*. "'Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that

7

provision is found, related provisions, and the statutory scheme as a whole." *Unruh v. Cacchiotti*, 172 Wn.2d 98, 113, 257 P.3d 631 (2011) (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)). "We may use dictionaries to discern the plain meaning of terms with 'well-accepted, ordinary' meanings." *Winters v. Ingersoll*, 11 Wn. App. 2d 935, 947, 456 P.3d 862 (2020) (quoting *State v. Alvarado*, 164 Wn.2d 556, 562, 192 P.3d 345 (2008)). When the plain language is clear, we may not add words where the legislature chose not to include them. *Nelson v. Dep't of Labor & Indus*., 198 Wn. App. 101, 110, 392 P.3d 1138 (2017).

II.      LEGAL PRINCIPLES

The statute of limitations for a medical malpractice claim is three years. *Cortez-Kloehn v. Morrison*, 162 Wn. App. 166, 171, 252 P.3d 909 (2011); RCW 4.16.350(3). "The three-year limitations period commences at the time of the last act or omission that allegedly caused the injury." *Unruh*, 172 Wn.2d at 107. However, RCW 7.70.110 provides that "[t]he making of a written, good faith request for mediation of a dispute related to damages for injury occurring as a result of health care prior to filing a cause of action under this chapter shall toll the statute of limitations provided in RCW 4.16.350 for one year."

RCW 7.70.110 is a tolling provision. *Cortez-Kloehn*, 162 Wn. App. at 171. "The unstated but apparent purpose of RCW 7.70.110 is to facilitate [the] settlement of disputes through mediation. Implicit in this purpose is the notion that the defendant receives notice of the request for mediation." *Unruh*, 172 Wn.2d at 114. To give effect to this purpose, our Supreme Court has "construe[d] RCW 7.70.110 to toll the statute of limitations when a request for mediation is made on the defendant or the defendant's authorized agent." *Id*. The court reasoned that, "[u]nder this interpretation, the defendant will receive notice that the plaintiff has requested mediation under RCW 7.70.110 and will have an opportunity to assent to the request." *Id*.

56697-4-II

RCW 7.70.110 is procedurally informal. *Id.* "Nothing in the plain language of the statute restricts the method of giving notice to personally serving a request for mediation on the prospective defendant." *Id.* "RCW 7.70.110 does not contain detailed service procedures. It requires only that the request for mediation be 'written' and be made in 'good faith.'" *Id.* (quoting RCW 7.70.110). In fact, as the *Unruh* court observed, the legislature did not include specific service requirements in RCW 7.70.110, as it did in the companion statute, former RCW 7.70.100, which governed the procedures for serving the 90-day notice of intent to sue. 172 Wn.2d at 114; LAWS OF 2013, ch. 82 § 1.

Generally, "[t]he statute of limitations is an affirmative defense that must be proved by the defendant." *Cortez-Kloehn*, 162 Wn. App. at 172. However, "[a] plaintiff asserting an exception to the statute of limitations [] bears the burden of proving that a tolling provision applies." *Id.*

III.    THE TRIAL COURT DID NOT ERR IN DENYING PROLIANCE AND DR. BLAIR'S MOTION

As an initial matter, although they are separate parties, we will address Proliance and Dr. Blair together because they have conceded that Dr. Blair was acting as an agent for Proliance. Wash. Court of Appeals oral argument, *supra*, at 10 min., 16 sec. to 11 min., 1 sec. Accordingly, the request for mediation to Dr. Blair is effective as to Proliance. *Deep Water Brewing, LLC, v. Fairway Resources Ltd.*, 152 Wn. App. 229, 268, 215 P.3d 990 (2009) ("Generally, a principal is chargeable with notice of facts known to its agent. This follows the duty of an agent to communicate his knowledge to the principal.").

9

56697-4-II

The parties agree that Fraley filed his complaint more than three years after the date of the alleged negligence.[3] Accordingly, Fraley's complaint is barred by the statute of limitations unless he can show that RCW 7.70.110 applies. Thus, the matter before us is whether Fraley's mediation letter was sufficient to toll the statute of limitations for one year under RCW 7.70.110.

Here, Fraley sufficiently invoked the one-year tolling provision to render his complaint timely because his mediation letter addressed to Dr. Blair met the requirements of RCW 7.70.110. The letter was clearly a written request for mediation and was made prior to filing his complaint, which Proliance and Dr. Blair do not dispute.

Additionally, the letter was made in good faith. The term "good faith" has been interpreted to mean "'an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage.'" *Breuer v. Douglas D. Presta, D.P.M*., 148 Wn. App. 470, 475, 200 P.3d 724 (2009) (internal quotation marks omitted) (quoting *Sattler v. Nw. Tissue Ctr*., 110 Wn. App. 689, 695, 42 P.3d 440 (2002)). In his declaration, Fraley explained that he understood the letter would toll the statute of limitations, but stated that part of the purpose was to mediate his medical malpractice claims against Dr. Blair. Fraley also stated that, until August 2020, he did not know that mediation was a possibility and that he would have preferred to mediate his claims rather than initiate a lawsuit. Although Fraley sent the mediation letter close to expiration of the statute of limitations (about two weeks prior), there is no evidence that Fraley sent the letter to the

---

[3] The parties do, however, disagree regarding the commencement date of the statute of limitations. Proliance and Dr. Blair contend that September 21, 2017, is the correct commencement date because that is the date Fraley stipulated to in his mediation letter. Fraley contends that September 23, 2017, is the correct date because that is the date of the last negligent act or omission that caused his injuries. But, as explained below, it is the "making" of the mediation request, not the defendant's "receipt," that triggers the one-year tolling provision in RCW 7.70.110. Because Fraley made his mediation request a few days before either of these dates, we need not decide when the statute of limitations commenced.

10

56697-4-II

wrong mailing address to seek an unconscionable advantage in doing so. Rather, viewing the evidence in light most favorable to Fraley, Fraley had a good faith belief that St. Joseph's was an appropriate place to send the request for mediation because that was the address where Dr. Blair actually performed the surgeries that gave rise to his claim.

"[RCW 7.70.110] requires only that the request for mediation be 'written' and be made in 'good faith.'" *Unruh*, 172 Wn.2d at 114 (quoting RCW 7.70.110). Because Fraley's mediation letter met both of these requirements, we hold that Fraley sufficiently invoked the one-year tolling provision in RCW 7.70.110 to render his complaint timely filed. Accordingly, the trial court did not err in denying Proliance and Dr. Blair's motion for summary judgment based on the statute of limitations.

Proliance and Dr. Blair argue that Fraley's mediation letter failed to meet the requirements of RCW 7.70.110 because Fraley sent it to the wrong address. More specifically, Proliance and Dr. Blair argues that, in order for a request for mediation to be made on the defendant or the defendant's registered agent, as *Unruh* requires, Fraley had to send the mediation letter directly to Dr. Blair's actual place of employment (his clinic). We disagree.

Here, Fraley's mediation letter was made "on the defendant," as *Unruh* requires, because it was specifically addressed to Dr. Blair at a place where Dr. Blair performed the surgeries that gave rise to Fraley's claims. Proliance and Dr. Blair takes issue with the fact that Fraley sent the letter to St. Joseph's Medical Center, which is neither Dr. Blair's actual employer nor Proliance's registered agent. However, in *Unruh*, the Supreme Court explained that RCW 7.70.110 is procedurally informal and does not contain detailed service provisions. 172 Wn.2d at 114. Neither RCW 7.70.110 nor *Unruh* make any mention of exactly where or how the written request should

11

56697-4-II

be sent.[4] By requiring a prospective plaintiff to mail a mediation letter to a specified business address, Proliance and Dr. Blair essentially asks us to stray from the principles of statutory construction and read words into RCW 7.70.110 that do not exist. *Unruh*, 172 Wn.2d at 114; *Nelson*, 198 Wn. App. at 110. We decline to do so.

Further, under *Unruh*, the statute requires only a request for mediation be made on the defendant or their authorized agent. Implicit in the purpose of the statute "is the notion that the defendant receives notice of the request for mediation." 172 Wn.2d at 114. The record shows that occurred here because Proliance and Dr. Blair did in fact receive the letter. St. Joseph's could have returned the mediation letter addressed to Dr. Blair, but choose to forward the letter to Proliance and Dr. Blair (which they eventually received). If St. Joseph's returned the mediation letter to Fraley, then he would have had to exercise his due diligence to find a different mailing address (or other method) sufficient to notify Dr. Blair. Accordingly, this argument fails.

Next, Proliance and Dr. Blair argue that Fraley's mediation letter failed to invoke the tolling provision of RCW 7.70.110 because, under CR 5, they *received* the letter *after* the statute of limitations had expired. They contend that CR 5's provisions should apply because RCW 7.70.110 remains silent as to the form of service required. We disagree.

As discussed above, RCW 7.70.110 provides that "[t]he making of a written, good faith request for mediation of a dispute related to damages for injury occurring as a result of health care prior to filing a cause of action under this chapter shall toll the statute of limitations provided in RCW 4.16.350 for one year." Nowhere in this statute did the legislature say that a medical provider's "receipt" of a written mediation request triggers the tolling provision. Rather, the

---

[4] Indeed, this makes sense. As Stacey's declaration demonstrates, from a patient's perspective, it is difficult to ascertain where a doctor or other medical provider's specific mailing address would be given the multiple locations where treatment and provider visits can occur.

statute's plain language provides that the "making" of the request "prior to filing a cause of action" triggers the tolling provision.  RCW 7.70.110.

Recently, in *Miller v. Miller*, we opined that "[s]ome definitions of 'make' include 'to execute in an appropriate manner: draw up,' 'to bring about,' and 'to cause to exist, occur, or appear: bring to pass: create, cause.'"  17 Wn. App. 2d 888, 895, 488 P.3d 910 (2021) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1363 (1993)).  In that marriage dissolution action, we concluded that the husband "made" his declaration in lieu of testimony under LCR 4.1(a) when he reviewed and signed it because that was the date he "executed or created it."  *Id*.

Here, Fraley executed or created his mediation request on September 11, 2020—the date he signed and mailed the letters.  Thus, that is the date he "made" a written, good faith request for mediation and invoked the one-year tolling provision in RCW 7.70.110.

Proliance and Dr. Blair contend that we should nevertheless ignore the plain language of RCW 7.70.110 because the court in *Cortez-Kloehn*, 162 Wn. App. 166, applied CR 5's service provisions to determine when a request was made.  We disagree.

In *Cortez-Kloehn*, both parties in their briefing applied CR 5's proof of service by mail standards to the question of whether a request was made under RCW 7.70.110.  162 Wn. App. at 174.  There, the court simply assumed for the purposes of that appeal that those standards applied— it did not actually decide that CR 5 did apply.  *Id*.

Here, Proliance and Dr. Blair's reliance on *Cortez-Kloehn* is unavailing because the parties here disagree on the application of CR 5.  Additionally, just one month after *Cortez-Kloehn* was decided, the Supreme Court issued its decision in *Unruh*, 172 Wn.2d 98.  As discussed above, *Unruh* made clear that courts should not stray from the settled principles of statutory construction in interpreting RCW 7.70.110.  172 Wn.2d at 114.  Proliance and Dr. Blair's argument runs afoul

13

of the Supreme Court's admonition because it adds words and requirements to RCW 7.70.110 that do not exist. *Nelson*, 198 Wn. App. at 110. Again, tolling under RCW 7.70.110 is deemed effective upon the "making" of a written good faith request for mediation prior to filing a cause of action—not its "receipt."

In their reply brief, Proliance and Dr. Blair also contend that, under RCW 23.95.450, service on an entity could only be deemed on the defendant or the defendant's registered agent if it were correctly addressed. We disagree because, again, their argument would require us to add words and requirements to RCW 7.70.110 that do not exist. *Nelson*, 198 Wn. App. at 110. Under our interpretation of the statute, the making of the request is the point, not whether it was correctly addressed.

In sum, Fraley made a timely written, good faith request for mediation sufficient to toll the statute of limitations on his medical malpractice claims for one year. The tolled statute of limitations was September 2021; Fraley filed his complaint on May 29, 2021. Therefore, the trial court did not err in concluding that Fraley's complaint was timely filed. Accordingly, we affirm the trial court's order denying Proliance and Dr. Blair's motion for summary judgment and remand for further proceedings.

## CONCLUSION

We affirm the trial court's order denying Proliance and Dr. Blair's motion for summary judgment and remand for further proceedings.

56697-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Lee, J.

_____
Glasgow, C.J.